**Application of Wilhelm Johann MENIG.**

**Patent Appeal No. 8996.**

United States Court of Customs and Patent Appeals.

Sept. 13, 1973.

Linton & Linton, Washington, D. C., attorneys of record, for appellant; Ulle C. Linton, Washington, D. C., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; John W. Dewhirst, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

ALMOND, Senior Judge.

This is an appeal from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, affirming the rejection of claims 15–18 of appellant's application for patent entitled "Nail Plate for Joining Articles, Especially Wooden Components."[1] We affirm.

The invention will be apparent from Figs. 1 and 2 of the drawing, sectional

---

1. Serial No. 745,720 filed July 18, 1968, and claiming priority based on a Swiss application filed October 19, 1967.

and plan views, respectively, taken in connection with claim 15, which is reproduced with reference characters inserted:

*Fig.1*

*Fig.2*

15. A nail plate for joining articles, in particular for joining wooden components, said nail plate comprising an anchor plate [1] of foamed synthetic resin and a fibreglass mat, both impregnated with synthetic resin and a plurality of pointed nails [2] rigidly embedded in the synthetic resin in said anchor plate, the points of said nails projecting perpendicularly on both sides of said plate.

In use, the nail plate is placed between two articles, such as wooden components, and the articles are pressed together forcing the pointed ends of the nails into both articles.

Claims 16, 17 and 18 are dependent on claim 15, adding, respectively, that the foamed synthetic resin is a polyester, that the rows of nails are staggered and that the nails are of round section and are made of steel.

The references are:

Smith (Canada) 711,849, June 22, 1965, and DeGruyter (Great Britain) 313,962, February 13, 1930.

The Canadian patent discloses a nail plate connector illustrated in Fig. 1 below:

**FIG I**

The plate comprises a relatively thin sheet metal plate 12, through which a plurality of pointed nails extend on both sides of the plate. The connector may be coated with suitable resins for the purpose of locking the nails in position in the plate and protecting against rust. The patent teaches that the plate itself does not carry any of the load imposed on the joint with the result that the strength of the joint does not depend on the thickness of the plate.

The British patent also relates to a connector for wooden components. The connector comprises a metal plate having triangular teeth formed from portions of the plate bent to project alternately from opposite sides of the plate and shows the groups of teeth in staggered rows.

Claims 15, 16 and 18 were rejected by the examiner as obvious in view of the Canadian patent, noting that the only difference between the claimed plate and

the reference plate was in the specific material from which the anchor plate was formed. Claim 17 was similarly rejected further in view of the British patent with its showing of the teeth arranged in staggered rows. In affirming the examiner's rejection under 35 U.S.C. § 103, the board asserted that the claimed plate materials were known and held their use in lieu of the plate material of the reference to provide no unobvious advantages or unexpected results.

Appellant does not contend that fiberglass-reinforced resin structural elements were not known, but argues that the use of the selected materials in his anchor plate offers advantages that (1) the nails can be driven through it without first making openings, (2) the plate cannot rust and acts to seal the joint between the wood members being joined against moisture to prevent rusting of the nails, (3) plates of desired sizes may be cut from long lengths and widths, (4) retention of the nails is aided by the impregnation of the plate with resin, and (5) the plate can be compressed between the joined wood members. That argument appears to be essentially the same as was presented before the Patent Office and we find no error in the board's conclusion that appellant has advanced no unobvious advantages or unexpected results.

We find that the Patent Office has established a case of prima facie obviousness in view of the Canadian patent. The advantages argued by appellant, to the extent they are not clearly suggested by the Canadian patent, appear to be attributable solely to known or expected characteristics of the substituted material. Beyond setting out these advantages, appellant has not advanced any argument in support of the conclusion that they are unobvious and there has been no evidence submitted probative of the criticality of appellant's material which would rebut the case of prima facie obvious. See In re D'Ancicco, 439 F.2d 1244, 58 CCPA 1057 (1971).

The use of staggered rows of nails in the reference device, as presented in claim 17, would clearly have been obvious, particularly in view of the British patent. Claims 16 and 19 were not argued separately by appellant and plainly require no additional discussion.

The decision is affirmed.

Affirmed.